UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Emily Rutherford (also known as Emily Lambert),<br>    Plaintiff,<br>    v.<br><br>Angie Clements,<br>    Defendant. | Case # 1:25-cv-2172 |

### COMPLAINT AND DEMAND FOR JURY TRIAL

1. This is a lawsuit for breach of contract, fraud, mail fraud, conversion, and trespass.

### INTRODUCTION

2. This is a lawsuit for breach of contract, fraud, conversion, theft, and trespass. Defendants Angie Clements stole more than $200,000 from Plaintiff, leaving Plaintiff Lambert and her children homeless, and penniless.

### JURISDICTIONAL STATEMENT

3. This Court has jurisdiction over this matter under 28 U.S. Code § 1332 because this suit is between "citizens of different States" and the amount in controversy exceeds $75,000.
4. Additionally, this suit involves mail fraud which is government by federal law.
5. Venue is proper because the actions, events, and conduct at issue occurred, at least partially, in the U.S. District of the District of Columbia.

### THE PARTIES

6. Defendant, Angie Clements, resides at 985 Prospector Road Hackleburg, AL, 35564.
7. Ms. Clements is a citizen of the State of Alabama.

8. Plaintiff, Emily Rutherford, now resides at 113 Lake Drive East,

1

Livingston Montana, 59047, but at the time was a resident of 770 5th St NW APT 1107, Washington D.C. 20001.

9. Ms. Rutherford was at the time a resident and citizen of The District of Columbia.

## STATEMENT OF THE CASE

10. Plaintiff Emily Rutherford and Defendant Angie Clements were formerly close friends.

11. In late 2021, Rutherford and Clements jointly purchased real estate from Harold Landers to wit; around 1.5 acres with a two-story house and a

separate mobile home located at 985 Prospector Road, Hackleburg, Alabama ("the Hackleburg property" or "the property").

12. The total purchase price for the real estate was around $92,900.

13. Rutherford found the property, negotiated the purchase, and brokered the real estate deal.

14. Each purchaser (Clements and Rutherford) held a fifty (50) percent interest, jointly owned.

15. The deed on file with the Marion County Clerk and Recorder reflects that Rutherford and Clements are joint (50%) owners of the Hackleburg property.

### Clements' and Rutherford's Agreement

16. Rutherford and Clements agreed that Clements would provide the $25,000 down payment, and Rutherford would make all monthly mortgage payments, until the mortgage was paid off (totaling $78,204.31).

17. Rutherford paid all utility payments, including power, gas, trash pickup, and water.

18. As required by the mortgage agreement, Clements arranged for and purchased homeowners' insurance for the property. As required by the mortgage agreement both Rutherford and Clements were required to be named on the policy.

19. However, upon information and belief, Clements canceled the original policy (which named both Clements and Rutherford as policy holders and beneficiaries) around October 2023 and replaced the policy with a policy which named only Clements as policy holder.

20. Thereafter, unbeknownst to Rutherford, Clements arranged for only her (Clements') name on the insurance policy as a policy holder. (Allstate Policy # 831 317 307.)

21. Note that Rutherford is an "interested person" under Alabama insurance law;

3

and thus, Rutherford has an insurable interest in the Hackleburg property regardless of the names on the Allstate Policy.

22. Rutherford believed she had paid all property taxes, as she sent the money to Clements to do so, while Rutherford was working and residing in D.C.

23. Clements lived in a single-wide mobile home on the property; while Rutherford dwelt in the two-story, three-bedroom, one bathroom home.

24. Rutherford resided and slept in the largest bedroom of the house, the Master Bedroom.

25. Rutherford filled the two-story home with her personal property.

26. Rutherford's children, Lily, Connor, and Luke slept in the living room of the two-story house, while the children's upstairs bedrooms were being readied.

27. Rutherford's children's personal property, including toys, clothing, bicycles and other property, were kept in the two-story house.

**Rutherford's temporary work relocation to Washington, D.C.**

28. Around December 2022, Rutherford left to live temporarily in Washington, D.C. for work. Rutherford rented and resided in an apartment in Washington D.C. during this period.

29. As per the parties' agreement, Rutherford continued paying all utility bills: gas, water, light, and property taxes, remotely from Washington, D.C.

30. Rutherford, from Washington, D.C., also continued paying every monthly mortgage payment, on time, in the amount of $700 per month.

31. While in D.C., Rutherford made the mortgage payments electronically, to either Terry Lambert or Angie Clements, who then deposited the monthly installments directly into the bank account of the prior owner, Harold Landers.

32. Sometime around 2022, Clements established a romantic relationship with an individual named Benjamin Strickland.

33. Strickland later, around the end of 2022, moved in with Clements at the Prospector Road mobile home.

### Prior Owner Harold Landers Dies.

34. Around August 2023, prior owner (and mortgagor of the Prospector Road property) Harold Landers died.

35. After Landers' death, Landers' daughter Elicia L. Frederick requested that the monthly $700 payments be made to her (Elicia Frederick's) account.

36. Unbeknownst to Rutherford, Clements began pocketing the monthly $700 payments from Rutherford, unlawfully keeping the money for herself, and never turning the payments over to Elicia Frederick or to Landers' estate.

37. Rutherford continued making the monthly mortgage payments to Clements, who communicated to Rutherford that she (Clements) was properly forwarding the payments to the Landers' estate.[1]

### March 2024: Clements curiously mailed certain heirlooms from Rutherford's' house to Rutherford.

38. Unexpectedly and without Rutherford's invitation, around March 2024, Clements mailed certain cherished heirlooms belonging to Rutherford from Rutherford's house to Rutherford's D.C. address.

39. This indicates that Clements and Strickland seemed to be cleaning out the house while Rutherford was away, for no reason apparent to Rutherford.

### April 4, 2024: Clements' fraud, theft, and conversion forces the Landers Estate to send a demand letter.

---

[1] Because Rutherford paid the utility payments directly (electronically) to the utility providers, the utility payments remained up to date.

40. Clements' conversion and unlawful theft of Rutherford's' mortgage and property tax payments forced Landers Estate to hire a law firm (the Lowe firm) to send a letter of demand to Clements and Rutherford.

41. The letter of the demand was addressed to both Rutherford and Clements, at the Hackleburg property address; but Rutherford never saw the letter until months later because Clements did not share the letter with Rutherford.

42. Clements knew of the existence of the certified letter but kept this information from Rutherford.

43. By concealing the existence of the certified letter from Rutherford, Clements concealed the fact that Clements had been stealing, pocketing, and converting Rutherford's mortgage and property tax payments, and not paying them over to the prior owners or the County Treasurer.

### April 15, 2024: Rutherford's home burned to the ground.

44. On or about April 15, 2024, while Rutherford was in Washington, D.C., Rutherford's home on the property mysteriously burned to the ground.

45. The cause of the fire was unknown.

46. The destruction of the house caused Rutherford to suffer an extreme financial loss.

47. In fact, Rutherford's house was a 100% loss.

48. Rutherford also lost 100% of her and her children's personal property in the fire.

49. Clements raised an unknown amount of funds through cash app and various fundraising platforms by claiming that her home burnt down, despite the fact that Clements was not residing in the main home, and only Rutherford's property was actually lost in the fire.

### Rutherford's discovery of Clement's theft of conversion.

50. Immediately after learning of the destruction of her home, Rutherford drove to Hackleburg to survey the damage.

51. Upon arriving in Hackleburg, Rutherford learned of the April 4 certified demand letter.

52. The letter indicated that Clements and Rutherford were in default on the mortgage.

53. From this, Rutherford discovered that Clements had been pocketing Rutherford's mortgage and property tax payments rather than paying them over to the mortgagor and the County Treasurer.

54. Clements assured Rutherford that an insurance claim had been asserted for the damage to Rutherford's house, and that Allstate Insurance was preparing to issue a check in the amount of $229,403 for the loss of Rutherford's house.

### Clements and Rutherford negotiated a secondary agreement.

55. In June 2024, Rutherford and Clements negotiated a secondary agreement between themselves.

56. Rutherford, now homeless, was entitled to most of the insurance proceeds.

57. However, Rutherford agreed to accept $64,300 because Rutherford needed to pay for an immediate medical procedure.

58. Rutherford compromised with Clements to be charitable and giving to Clements and settle the issue without issues due to her health.

59. This agreement was in writing; both in a signed contract between both properties, and in text messages between Rutherford and Clements.

60. The insurance company (Allstate) made its payment to Clements.

61. Pursuant to the secondary agreement between the parties, around June 5, 2024, Clements mailed a check in the amount of $64,000 to Rutherford, at 770 5th St. NW in Washington, D.C.

62. However, after Rutherford returned to D.C. for work, Clements unlawfully canceled the check by issuing a stop payment order.

**Clements repudiates, cancels, rescinds, and breaches the secondary agreement, converting the insurance funds for herself and/or Strickland.**

63. Clements' act of stopping payment on the check constituted a rescission, repudiation, cancelation, and total breach of the secondary contract.

64. Thus Rutherford is entitled to the whole and entire $229,403 insurance settlement, minus whatever damages can be said to pertain to Clements' interest in the property.

65. On June 21, 2024, Rutherford had an attorney draft and send via certified mail a demand letter for the 64,300.00.

66. Around June 26, 2024, Clements texted Rutherford, saying that Strickland had cancelled the check, and failed to respond further nor made any effort to correct her breach.

### COUNT ONE: MAIL FRAUD BY MAILING A BAD, FRAUDULENT AND WORTHLESS CHECK.

67. Plaintiff incorporates by reference lines 1 through 68.

68. As described above, Clements used the U.S. mail to defraud Rutherford.

69. Rutherford suffered severe damages as a result of this fraud.

70. Clements' fraudulent check was in the amount $64,000, rendered on June 5, 2024.

71. Clements used the U.S. mails for this fraud scheme, which is a federal felony.

72. Rutherford sent written demand for payment to Clements, by first-class mail and certified mail, return receipt requested. Rutherford waited more than 90 days, but Clements did not pay the amount of the check.

73. Accordingly, Rutherford is entitled to twice the amount of the check, and attorneys' fees.

## COUNT TWO: FRAUD BY FALSE INSURANCE APPLICATION AND RECEIPT.

74. Plaintiff incorporates by reference lines 1 through 71.
75. As described above, Clements and Rutherford were required by their mortgage to obtain homeowners insurance. Clements misled Rutherford to believe she had obtained proper insurance. However, Clements had deceptively and fraudulently obtained insurance which named only herself as policyholder and beneficiary, with the intent to deprive Rutherford of her rights.
76. Clements used the U.S. mails for this fraudulent scheme, which is a federal felony.
77. Rutherford suffered severe damages, and is entitled to compensatory and punitive damages, along with attorneys fees.

### COUNT THREE: ISSUING A WORTHLESS CHECK.

78. Plaintiff incorporates by reference lines 1 through 77.

79. AL Code § 6-5-285 (2023) states that: "The holder of a worthless check, draft, or order for the payment of money shall have a right of action against

the person who unlawfully made, uttered, or delivered the same to him or to his endorser; and such action may be maintained though there has been no prosecution, conviction, or acquittal of the defendant for his unlawful act. . . . The plaintiff in such action may recover such damages, both punitive and compensatory, including a reasonable attorney fee, as the jury or court trying the case may assess." Further, negotiating a worthless negotiable instrument is a Class A misdemeanor in Alabama.

80. In violation of Section 6-5-285, as described above, Clements negotiated a worthless check to Rutherford in the amount of $64,000. Rutherford is entitled to recovery of this sum from the Defendants, plus punitive damages and attorney's fees.

## COUNT FOUR: BREACH OF CONTRACT

81. Plaintiff incorporates by reference lines 1 through 80.

82. As described above, Defendant Clements had a valid contract with Rutherford. Clements breached the contract by failing to include Rutherford on the insurance policy and by failing to pay over Rutherford's share of the insurance settlement.

83. Accordingly, Rutherford is entitled to compensatory and punitive damages, along with attorney's fees.

## COUNT FIVE: CONVERSION.

84. Plaintiff incorporates by reference lines 1 through 83.

85. As described above, Clements received thousands of dollars of mortgage payments and property tax payments from Rutherford, to be delivered and paid forward to the mortgage holder(s) and the County Treasurer.

86. As described above, Clements intentionally kept, stole, and pocketed these funds for herself.

87. Later, when Clements received the insurance settlement described above—which belonged mostly to Rutherford—Clements intentionally kept, stole, and pocketed these funds for herself.

## COUNT SIX: TRESPASS

88. Plaintiff incorporates by reference lines 1 through 87.

89. As described above, Clements and Strickland have committed trespass to Rutherford's house and left it destroyed and devoid of value.

90. As a result, Rutherford suffered severe damages, and Rutherford is

entitled to her losses, damages (including punitive damages), and attorneys fees.

## PRAYER FOR RELIEF

ACCORDINGLY, Rutherford prays for relief from this Court, including

(1) compensatory damages of $229,403, the amount of the insurance settlement, minus whatever damage can be said to pertain to Clements' interest in the property. (Because the destroyed house and personal property on the real estate were Emily Rutherford's, any residual damage pertaining to Clements' interest should be quite minimal.)
(2) punitive damages, of $100,000
(3) attorney's fees, costs, and
(4) any other relief as this Court sees fit.

Rutherford also requests this Court to issue a preliminary injunction upon any future or pending sale of the real estate in question, and a lien upon the title of the property in the amount of Rutherford's suffered damages, in favor of Rutherford.

DATED: July 8, 2025,                    RESPECTFULLY SUBMITTED,

                                            Respectfully submitted,
                                            */s/ Roger Roots*
                                            Roger Roots
                                            10 Dorrance Street, Suite #700
                                            Providence, RI 02903
                                            775-764-9347
                                            Email: roger@rootsjustice.com
                                            Counsel for Defendant

## CERTIFICATE OF SERVICE

I Roger I. Roots certify that, a copy of the foregoing filing is being served electronically on all parties registered with the Court's ECF system.