UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMILY HOPE RUTHERFORD,

    *Plaintiff*,

v.

ANGIE CLEMENTS,

    *Defendant*.

Civil Action No. 25-2172 (TJK)

### MEMORANDUM ORDER

Emily Rutherford sued Angie Clements over a joint home purchase gone wrong in Alabama. Clements never responded. The Clerk of Court thus entered default as to Clements, and Rutherford now moves the Court for default judgment. But Rutherford's motion does not address whether the Court has personal jurisdiction over Clements in this Alabama-centered dispute, and Clements' contacts with the District of Columbia, at least as alleged, appear insufficient to furnish such personal jurisdiction. For that reason, the Court will deny the motion without prejudice.

**I.  Background**

According to Rutherford's complaint, she and Clements were "formerly close friends" who, in late 2021, "jointly purchased" a house and separate mobile home on a 1.5-acre tract of land in Hackleburg, Alabama. ECF No. 1 ¶¶ 6–11. Clements agreed to put up the down payment for the property and purchased homeowners' insurance while Rutherford agreed to make the monthly mortgage and utility payments. *Id.* ¶¶ 16–18. After the purchase, Rutherford resided in the house with her children while Clements lived in the mobile home. *Id.* ¶¶ 23–27. At an undisclosed time during their residence on the property, Clements removed Rutherford's name from the insurance policy without Rutherford's knowledge. *Id.* ¶¶ 19–20.

Around December 2022, Rutherford relocated "to live temporarily in Washington, D.C. for work," though she continued to maintain the house in Alabama. ECF No. 1 ¶¶ 28–30. Rutherford allegedly believed that she continued to pay the monthly mortgage on the house by sending payments via check to Clements, who then, "[u]nbeknownst to Rutherford," "began pocketing the monthly $700 payments . . . and never turning the payments over to" the sellers of the house.[1] *Id.* ¶ 36. Because the prior owners never received the mortgage payments they were owed, they sent a demand letter in April 2024 to the Alabama house for the unpaid amounts. *Id.* ¶¶ 40–41. But "Rutherford never saw the letter . . . because Clements did not share the letter." *Id.* ¶¶ 41–43. And around the same time, while Rutherford was still in D.C., Clements allegedly "seemed to be cleaning out the house" by "mail[ing] certain cherished heirlooms belonging to Rutherford . . . to Rutherford's D.C. address." *Id.* ¶¶ 38–39.

The same month the demand letter arrived, the Alabama house "mysteriously burned to the ground." ECF No. 1 ¶ 44. The house was "100% los[t]" along with Rutherford's personal property in the house, but "Clements assured Rutherford that . . . Allstate Insurance was preparing to issue a check in the amount of $229,403 for the loss." *Id.* ¶¶ 46–48, 54. Out of an urgent need to "pay for an immediate medical procedure, "Rutherford compromised with Clements" and "negotiated a secondary agreement" where Rutherford agreed by contract to take just $64,300 of the insurance payout. *Id.* ¶¶ 55–60. When Allstate Insurance paid out, "Clements mailed a check in the amount of $64,000 to Rutherford . . . in Washington, D.C." *Id.* ¶ 61. But Rutherford alleges that she could not cash the check, as Clements issued a stop payment order. *Id.* ¶ 62.

---

[1] The exact nature of the mortgage arrangement between Rutherford/Clements and the prior owners is not alleged in the complaint.

In July 2025, Rutherford brought several claims against Clements, including for mail fraud, breach of contract, and issuing a worthless check. ECF No. 1 ¶¶ 67–90. She timely effected service on Clements at the Alabama house's address in August 2025. ECF No. 4. Clements never answered the complaint. The Clerk of Court thus docketed an entry of default as to Clements, ECF No. 7, and Rutherford now moves for default judgment, ECF No. 8.

## II.   Legal Standard

Even when a defendant fails to respond to a lawsuit, "the entry of a default judgment is not automatic." *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). Instead, "a court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." *Id.* The initial standard for finding personal jurisdiction is not high; "a court ordinarily demands only a prima facie showing of jurisdiction by the plaintiffs." *Id.* Only "if the court takes evidence on the issue" does "a heightened, preponderance of the evidence standard appl[y]." *Id.* at 7; *see also* Fed. R. Civ. P. 55(b)(2) (establishing the court's power to take evidence before entering default judgment).

## III.   Analysis

In the absence of any federal statute indicating otherwise, this Court's personal jurisdiction is coextensive with that of the D.C. Superior Court.[2] *See* Fed. R. Civ. P. 4(k)(1)(A). Thus, the District of Columbia long-arm statute governs this Court's personal jurisdiction over Clements.

---

[2] Far from citing a federal statute that authorizes personal jurisdiction, Rutherford's complaint does not appear to cite any federal law at all. The closest the complaint comes is its claim for "mail fraud," which Rutherford characterizes as being "govern[ed] by federal law." ECF No. 1 ¶ 4. But the federal mail fraud statute, 18 U.S.C. § 1341, is a criminal statute that does not provide a private right of action for civil plaintiffs. *See Ellis v. CapitalSource Bank FBO Aeon Fin., LLC*, 924 F. Supp. 2d 282, 288 (D.D.C. 2013) (finding no private right of action under the mail fraud statute); *see also Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (holding that 18 U.S.C. § 1341 is a "criminal statute[] that do[es] not provide for a private right of action and are thus not enforceable through a civil action.").

*See* D.C. Code § 13–423.  That statute lays out a discrete list of actions an individual can take that will place them under the personal jurisdiction of the D.C. courts.  *See id.* § 13–423(a)(1)–(7).  The only provision in the list that seems relevant to this situation is the first, which permits the D.C. courts to "exercise personal jurisdiction over a person . . . transacting any business in the District of Columbia."  *Id.* § 13–423(a)(1).

"[T]e sweep of the 'transacting any business' provision . . . covers any transaction of business in the District of Columbia that can be reached jurisdictionally without offending the due process clause."  *Mouzavires v. Baxter*, 434 A.2d 988, 993 (D.C. 1981).  Accordingly, the D.C. Court of Appeals has looked to Supreme Court precedent interpreting what the Due Process Clause requires.  One of those precedents, which the D.C. Court of Appeals has explicitly looked to, *id.*, is *Hanson v. Denckla*, 357 U.S. 235 (1958).  In *Hanson*, the defendant had engaged with the plaintiff, who resided in Florida, regarding the distribution of trust income; among other activities, the defendant "remitted the trust income to [the plaintiff] in that State." *Id.* at 252.  Otherwise, however, the relationship between the defendant and the plaintiff in *Hanson* arose from a trust agreement created in Delaware.  The Supreme Court held that "the [defendant's] performance of small amounts of trust administration and the receipt of trust income in Florida did not give Florida a substantial connection with the trust agreement which was the basis of the suit."  *Mouzavires*, 434 A.2d at 993 (discussing *Hanson*).

As alleged, Clements's contacts with the District of Columbia do not appear to be any more extensive than the defendant's contacts with Florida in *Hanson*.  The only contact Clements is alleged to have had with D.C. is by mail—one time when she mailed to Rutherford's D.C. address "certain cherished heirlooms," and a second time when she mailed the allegedly fraudulent check for $64,000. ECF No. 1 ¶¶ 38, 61.  Otherwise, the entire dispute between Rutherford and Clements

4

appears rooted in the state of Alabama: Clements resides in Alabama, the jointly purchased house is in Alabama, the Allstate insurance payout was sent to the Alabama address, and one of the claims for "issuing a worthless check" is brought under Alabama law, *see id.* ¶¶ 78–80. Against this backdrop, the mailing of personal property and a check is arguably akin to the mailing of trust income seen in *Hanson*—insufficient by itself to give the District of Columbia a "substantial connection" with the underlying conflict that forms "the basis of the suit." *Mouzavires*, 434 A.2d at 993. Thus, it appears that Clements likely has not "invoked the benefits and protections of the District's laws" in a way that would obligate her to respond to suit here. *Id.* at 997; *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945).

To be sure, contact by mail can count as "physical entry into the State" in a way that is "certainly a relevant" factor in determining whether Clements has transacted business in the District of Columbia. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). But the mere fact that the personal jurisdiction analysis can take into account mailings does not mean that *these* mailings, on their own, are sufficient for personal jurisdiction. And indeed, sporadic, non-systemic contact by mail will seldom establish personal jurisdiction without more. *See, e.g.*, *Mitchell Energy Corp. v. Mary Helen Coal Co.*, 524 F. Supp. 558, 564 (D.D.C. 1981) (finding no personal jurisdiction despite the defendant's "[e]xchange of letters and telephone communications with a party in the District of Columbia").

Thus, upon consideration of the allegations in the complaint and without any briefing on the issue, the Court is skeptical that Rutherford has made out a prima facie case that Clements transacted business in the District in a manner sufficient to establish personal jurisdiction over her. So the Court will deny the motion for default judgment, but do so without prejudice. The Court will require Rutherford to file a renewed motion for default judgment that addresses whether the

Court has personal jurisdiction over Clements or the Court will dismiss the case for lack of personal jurisdiction.

## IV. Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Rutherford's Motion for Default Judgment, ECF No. 8, is **DENIED WITHOUT PREJUDICE**.  It is further **ORDERED** that by March 2, 2026, Rutherford shall file a renewed motion for default judgment that addresses whether the Court has personal jurisdiction over Clements.  If Rutherford fails to do so, the Court will dismiss the case for lack of personal jurisdiction.

**SO ORDERED**.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: February 3, 2026