**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Emily Rutherford (also known as Emily Lambert), Plaintiff, | ) | |
| v. | ) | Case # 25-cv-2172-TJK |
| Angie Clements, Defendant. | ) | |

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT**

Plaintiff Emily Rutherford respectfully moves the Court for entry of default judgment against Defendant Angie Clements pursuant to Fed. R. Civ. P. 55(b)(2). Plaintiff submits this renewed motion in response to the Court's Order denying Plaintiff's prior motion without prejudice and directing Plaintiff to address personal jurisdiction. In support, Plaintiff states as follows:

## I. PROCEDURAL BACKGROUND

Plaintiff filed her Complaint on July 8, 2025 (ECF No. 1). Defendant was personally served by process server, with the summons and Complaint on August 2, 2025 (ECF No. 4, Affidavit of Service). Under Fed. R. Civ. P. 12(a)(1)(A)(i), Defendant's responsive pleading was due August 23, 2025. Defendant failed to answer, move, or otherwise defend.

On August 27, 2025, at Plaintiff's request, the Clerk entered default against Defendant under Rule 55(a) (ECF No. 7). Defendant remains in default and has not appeared.

## II. LEGAL STANDARD

After entry of default by the Clerk, the Court may enter default judgment under Rule 55(b). *See Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). Upon default, the well-pleaded factual allegations of the complaint, except those relating to damages, are taken as true. *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67–68 (D.D.C. 2011).

The Court must still determine whether the allegations state a claim for relief, and must determine

damages with reasonable certainty. *Jackson v. Beech*, 636 F.2d 831, 835–36 (D.C. Cir. 1980). The Court may determine damages on the basis of affidavits, documentary evidence, and detailed calculations, and may hold a hearing only if necessary. *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall*, LLC, 531 F. Supp. 2d 56, 57–58 (D.D.C. 2008).

Because a federal court must have personal jurisdiction before it may enter judgment, Plaintiff addresses personal jurisdiction and venue below using the allegations of the Complaint and the accompanying declarations.

## III. ARGUMENT

### A. The Court Has Personal Jurisdiction Over Defendant and Venue Is Proper

A court must assure itself of personal jurisdiction before entering default judgment. *See Mwani*, 417 F.3d at 6 (default judgment requires a sufficient basis for personal jurisdiction). In the District of Columbia, personal jurisdiction requires satisfaction of both the D.C. long-arm statute and due process. *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347–49 (D.C. Cir. 2000).

The D.C. long-arm statute is satisfied. The long-arm statute provides jurisdiction over a person who, directly or by an agent, "transact[s] any business in the District of Columbia." D.C. Code § 13–423(a)(1). "Transacting business" is construed broadly and encompasses purposeful District-directed contractual dealings where the claim arises from those dealings. *Mouzavires v. Baxter*, 434 A.2d 988, 992–95 (D.C. 1981) (en banc).

Here, Defendant's contacts were not limited to a single fortuitous mailing. Defendant purposefully directed a written settlement agreement into Washington, D.C. for Plaintiff's review, acceptance, and execution; Plaintiff resided in, and filed taxes for two years as a resident of Washington D.C. Plaintiff  executed and accepted that agreement while physically located in Washington, D.C.; and Defendant continued communicating with Plaintiff while Plaintiff was in Washington, D.C. regarding negotiation, execution, performance, and breach. These District-directed contractual dealings are the very subject of Plaintiff's claims for breach and fraud. The District long-arm statute is therefore satisfied.

Due process is satisfied. Due process requires "minimum contacts" with the forum such that maintaining the suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945). The contacts must reflect purposeful availment, and the suit must arise out of or relate to those contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985); *Ford Motor Co. v. Montana* Eighth Jud. Dist. Ct., 592 U.S. 351, 358–62 (2021).

Defendant purposefully availed herself of the privilege of conducting business in the District by directing a settlement contract to Plaintiff in Washington, D.C. for acceptance and execution, knowing Plaintiff was located, and residing in the District, and by directing ongoing suit-related communications and performance into the District. Plaintiff's claims arise out of and relate to those District-directed contractual dealings and Defendant's subsequent breach, including Defendant's mailing of the payment instrument into the District and stopping payment thereafter. Exercising jurisdiction is also reasonable: the dispute turns on the contract Defendant directed into the District and the ensuing District-directed communications.

Venue is proper. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including Defendant's transmission of the settlement agreement into the District for execution, the District-based execution and acceptance, suit-related communications directed into the District, and Defendant's mailing of the payment instrument into the District.

**B. Defendant's Default Establishes Liability on Plaintiff's Claims**

Defendant's default constitutes an admission of the Complaint's well-pleaded allegations of liability. *Mwani*, 417 F.3d at 6; *Boland*, 763 F. Supp. 2d at 67–68. Those allegations establish each element of Plaintiff's claims.

Breach of Contract. To state a claim for breach of contract, a plaintiff must allege: (1) a valid contract; (2) an obligation arising from the contract; (3) breach; and (4) damages caused by the breach. *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). Plaintiff alleges that the parties entered a settlement agreement allocating proceeds to Plaintiff; Plaintiff executed and returned the agreement; Defendant issued a payment instrument and then repudiated the agreement by stopping payment; and Plaintiff suffered damages.

2. Fraud / Intentional Misrepresentation. A claim for fraud requires a false representation of a material fact, made knowingly (or with reckless disregard), with intent to induce reliance, actual reasonable reliance, and

resulting damages. *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977). Plaintiff alleges Defendant knowingly misrepresented and concealed material facts concerning Plaintiff's entitlement to funds and the validity of payment, induced reliance, and caused damages. Default admits these allegations.

3. Conversion / Unjust Enrichment (as pleaded). Plaintiff also alleges Defendant wrongfully exercised dominion and control over funds belonging to Plaintiff and retained those funds unjustly. Defendant's default admits these allegations and establishes liability on those claims as pleaded.

### C. Plaintiff Has Proven Damages and Entitlement to Requested Relief

Even on default, Plaintiff must prove damages with reasonable certainty. Auxier Drywall, 531 F. Supp. 2d at 57–58. Plaintiff's damages and requested relief are supported by Plaintiff's declaration and the pleadings, and can be entered without an evidentiary hearing.

Compensatory damages. Plaintiff seeks compensatory damages of $229,403 (the approximate insurance payout for the dwelling loss, as pleaded), and alternatively seeks at minimum the liquidated settlement amount of $64,300 (or approximately $64,000 as reflected by the check amount), plus any additional compensatory damages supported by the record. Liquidated sums may be awarded based on affidavit evidence. *Auxier Drywall*, 531 F. Supp. 2d at 57–58.

Punitive damages. Punitive damages may be awarded where the defendant's conduct is willful, wanton, malicious, or in reckless disregard of the plaintiff's rights. Plaintiff seeks punitive damages of $100,000 based on Defendant's intentional misconduct as pleaded and admitted by default. The requested amount is reasonable in relation to Defendant's fraud and the harm to Plaintiff.

Prejudgment interest. Plaintiff seeks prejudgment interest on liquidated sums at the applicable statutory rate. In the District of Columbia, prejudgment interest is commonly calculated at 6% per annum under D.C. Code § 28-3302(a) for liquidated sums. Plaintiff requests interest accruing from June 5, 2024 through August 29, 2025, in the amount of $16,977, to be filled in based on the Court's preferred accrual date.

Attorneys' fees and costs. Plaintiff requests reasonable attorneys' fees and costs where permitted by law. Plaintiff seeks fees under Ala. Code § 6-5-285 to the extent applicable to the stopped-payment check and requests

$ 30,000 based on 60 hours at $500.00. Plaintiff also seeks recoverable costs including filing and service costs totaling approximately $790.10.

Post-judgment interest. Plaintiff requests post-judgment interest pursuant to 28 U.S.C. § 1961 from the date judgment is entered until paid.

## IV. RELIEF REQUESTED

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Renewed Motion and enter default judgment against Defendant Angie Clements, awarding compensatory damages, punitive damages, prejudgment interest, attorneys' fees and costs where permitted, and post-judgment interest, and granting such other relief as the Court deems just and proper.

DATED: March 02, 2026 Respectfully submitted,

/s/ Roger I Roots
Roger Roots
10 Dorrance Street, Suite #700
Providence, RI 02903
775-764-9347
Email: roger@rootsjustice.com

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

Emily Rutherford (also known as Emily Lambert), )

Plaintiff, ) Case # 25-cv-2172-TJK

v. )

)

Angie Clements, )

Defendant.

**DECLARATION OF EMILY RUTHERFORD (A/K/A EMILY LAMBERT)**

**IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT**

I, Emily Rutherford (also known as Emily Lambert), declare as follows:

1. Identity / competency. I am over eighteen (18) years old and competent to make this declaration. I have personal knowledge of the facts stated below and, if called as a witness, could and would testify truthfully to them.

2. Residence and presence in the District of Columbia. During the time period relevant to this dispute, including on the dates referenced below, I was living and working in Washington, D.C. My address during that time was 770 5th Street NW, Washington DC 20001. I filed taxes as a resident of Washington D.C., and was registered to vote in Washington D.C.

3. Contract transmitted into D.C. for acceptance. While I was physically located in Washington, D.C., Angie Clements sent/transmitted to me a written settlement contract (the "Settlement Agreement") for my review, acceptance, and signature.

(a) The Settlement Agreement was transmitted to me on or about May 30, 2024 at approximately 8:10 am (local time).

(b) The Settlement Agreement was transmitted by email and text message while I was residing in Washington D.C., which was known to Ms. Clements.

At the time Ms. Clements transmitted the Settlement Agreement to me, she knew I was located in Washington, D.C., including because she had mailed me multiple packages, and documents, including my family heirlooms without my request. As well as received packages and mail from me, during the period I resided in Washington D.C.

4. Execution/acceptance in D.C. I executed and accepted the Settlement Agreement while I was physically located in Washington, D.C.

(a) I signed the Settlement Agreement on 5/30/2024 at approximately 8:10 am, while located at 770 5th Street NW, Washington DC 20001.

(b) The Settlement Agreement required it be signed and returned before payment would be issued and mailed.

5. Return of the executed agreement. After signing, I returned the executed Settlement Agreement to Ms. Clements from Washington, D.C.

(a) I returned it on 5/30/2024 at approximately 8:20 am by email, and confirmed via text.

(b) By email/text, I sent it to angie.clements@namccares.com, and text 513-560-0929.

6. Settlement amount. Under the Settlement Agreement, Ms. Clements agreed to pay me $64,300 (or approximately $64,000 as reflected by the check amount) in exchange for the releases/terms set forth in the Settlement Agreement.

7. Check mailed / stop payment. After I executed the Settlement Agreement and returned it, Ms. Clements sent me 300.00 via Venmo, and issued a check to me in the amount of $64,000, and caused it to be mailed to me at 770 5th Street NW, Washington DC 20001 on or about June 5th 2024.

(a) The check was drawn on Listerhill Credit Union and dated June 5th 2024, and deposited into my bank account located in Washington D.C. at 901 7th St NW, Washington, DC 20001.

(b) Ms. Clements later caused payment on the check to be stopped on or about June 10th, 2024 , and I did not receive the funds.

8. Ongoing D.C.-directed communications. While I was in Washington, D.C., Ms. Clements and I

communicated about the Settlement Agreement, my acceptance and execution of it, and the payment to be made under it. Those communications occurred by text, emails, and phone calls, including on or about May 30th, 2024 through July 2nd 2024, and were part of the negotiation, execution, performance, and breach of the Settlement Agreement. Ms. Clements knew during these communications that I was located in Washington, D.C.

9. Reliance and harm. I relied on Ms. Clements' agreement and her issuance of the check, including because I urgently needed funds for living expenses and medical costs, Housing costs, and care for my children following the fire as we lost everything except the items Ms. Clements mailed to us prior to the fire. As a result of the stop payment and Ms. Clements' refusal to remit payment, I suffered financial harm including having no place to live, having to delay medical treatment, and increased costs of living.

10. I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 2nd 2026 at Kingman, Az.

_/s/ Emily Rutherford

Emily Rutherford (a/k/a Emily Lambert)

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Emily Rutherford (also known as Emily Lambert), | ) | |
| Plaintiff, | ) | Case # 25-cv-2172-TJK |
| v. | ) | |
| | ) | |
| Angie Clements, | ) | |
| Defendant. | | |

**DECLARATION OF ROGER ROOTS IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT**

I, Roger Roots, declare as follows:

1. I am an attorney duly licensed to practice law before this Court and am counsel of record for Plaintiff Emily Rutherford in the above-captioned matter. I make this declaration based on my personal knowledge and review of the Court's docket and the case file maintained in my office.

2. On July 8, 2025, Plaintiff filed the Complaint in this matter (ECF No. 1).

3. Defendant was served with the summons and Complaint on August 2, 2025, as reflected in the proof of service filed on the docket (ECF No. 4).

4. Pursuant to Fed. R. Civ. P. 12(a)(1), Defendant's response was due on August 23, 2025. Defendant has not filed any response or appeared.

5. On August 27, 2025, the Clerk entered default against Defendant pursuant to Fed. R. Civ. P. 55(a) (ECF No. 7).

6. Upon information and belief, based on reasonable inquiry, Defendant is not in military service within the meaning of the Servicemembers Civil Relief Act, 50 U.S.C. § 3931.

7. I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 2nd 2026 at Kingman AZ.

/s/ Roger I. Roots

Roger Roots